## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| CLAIRE DECKER | * | CIVIL ACTION NO. 06-1169 |
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Claire Decker, born January 14, 1952, filed applications for a period of disability, disability insurance benefits, and supplemental security income on January 4, 1999, alleging disability as of July 31, 1998, due to Epstein Barr virus, varicose veins, lung problems, cysts, gallstones, and thyroid problems.  After this application was denied initially, on reconsideration, and by Administrative Law Judge ("ALJ") E. Wilson Crump, the Appeals Council remanded this action on June 18, 2002.  After a remand hearing, ALJ Crump issued a second unfavorable decision, upon which the Appeals Council denied review on January 7, 2004.

Subsequent to receiving the denial of review, claimant filed for judicial review with this Court under Docket No. 04-0569.   On November 12, 2004, the

Commissioner filed an unopposed Motion to Remand.  [Docket No. 04-0569, rec. doc. 9; Tr. 446-449].  By Judgment entered on November 17, 2004, the undersigned reversed and remanded this matter to the Commissioner for further administrative proceedings. [rec. doc. 10; Tr. 445, 451-454].

On remand, claimant attended a third administrative hearing before ALJ Kim A. Fields.  On April 25, 2006, ALJ Fields issued a unfavorable decision.  (Tr. 426-38).  On June 28, 2006, claimant filed a complaint for judicial review with this Court.

<u>FINDINGS AND CONCLUSIONS</u>

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:[1]

**(1) Consultative examination by Dr. Nathaniel Winstead dated February 1, 2003**.  Claimant presented with Epstein Barr virus, CMV, lung problems, cysts,

---

[1]Although all of the medical records were reviewed by the undersigned, only those relating to the most recent remand are summarized herein.

gallstones, thyroid problems, mental problems, daily headaches lasting two to five hours with nausea and blurred vision, and worsening vision and hearing.  (Tr. 330). She stated that the main reason that she could no longer work was because of fatigue, which started in 1997.  She also had a history of thyroid problems, fibromyalgia, circulation problems in her legs, and headaches.

Claimant reported that she could dress and feed herself.  She said that she could stand for 10 minutes at a time, and for a total of 10 minutes out of an 8-hour day.  She stated that she could walk for two miles on level ground, sit for about 10 minutes at a time, and drive for about 20 minutes at a time.  She also said that she could do simple household chores like sweeping, mopping, cooking, doing dishes, and going up stairs.

On examination, claimant was 66 inches tall, and weighed 177 pounds.  (Tr. 331).  Her blood pressure was 123/76.  She appeared somewhat disheveled and depressed.  She ambulated well, and was able to get on and off the exam table and up and out of the chair without difficulty.  She was also able to dress and undress without difficulty.

Claimant had numerous areas of excoriation on her arms and legs, which appeared to be from itching.  Her visual acuity was 20/40 bilaterally with glasses. Her lungs were clear to auscultation.  (Tr. 332).  Her heart had regular rate and

3

rhythm with no murmurs, gallops, or rubs.

In the spine and extremities, claimant had bounding 2+ pulses.  She had no cyanosis, clubbing, or edema.  Grip strength was 5/5.  She was able to ambulate without assistance.  She had no atrophy or deformity of any muscle groups.

Neurologically, claimant seemed to have somewhat less than adequate personal hygiene.  She could follow simple directions.  Her affect was flat, and her mood appeared to be depressed.

Claimant's sensory examination was intact.  She had no signs of any cerebellar deficits.  Cranial nerves were intact.

Dr. Winstead's impression was that claimant appeared to be depressed.  He thought that she might have some underlying medical illness.  He stated that her lung exam was completely normal.  Overall, Dr. Winstead opined that claimant had no real limitation on her ability to sit, stand, walk, lift, hear, speak, or handle objects.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Winstead opined that claimant had no limitations as to lifting, carrying, standing, walking, sitting, pushing, or pulling.  (Tr. 333-34).  He stated that she could perform all postural activities frequently.  (Tr. 334).  He noted that she was unlimited regarding manipulative, visual, and communicative functions.  (Tr. 335). She had no environmental limitations.  (Tr. 336).

4

**(2) Records from Dr. Milton Jolivette, Jr. dated November 30, 2004 to November 30, 2005**.  On November 30, 2004, claimant had symptoms of an upper respiratory infection and an injured right chest wall after a fall.  (Tr. 494).  On x-ray, she had two rib fractures, but no pleural effusion or underlying pneumonia.  (Tr. 494-95).  Dr. Jolivette's impression was an upper respiratory infection.

On April 5, 2005, claimant was seen for chronic fatigue syndrome ("CFS").  (Tr. 492).  Since December, she had tried working at a bookstore, but had had difficulty keeping up.  She had also had a difficult time with working and keeping her household.  Dr. Jolivette prescribed Desyrel as a sedative and anti-depressant to help with CFS.  He noted that on questioning, claimant had at least 95% of the symptoms of someone with CFS.

On June 16, 2005, claimant had symptoms strongly suggestive of fibromyalgia, but had an element of CFS with this.  (Tr. 489).  She also had symptoms of hypoglycemia and hypothyroidism.  Dr. Jolivette found that claimant had symptoms which were consistent with fibromyalgia and CFS, but was hesitant to take any medication because of the potential of addiction problems.

On July 25, 2005, claimant was seen for followup.  (Tr. 486).  She had tried to follow the diet for hypoglycemia.  She did not have any change in her general symptoms.

5

Dr. Jolivette noted that claimant continued to have chronic fatigue, and he doubted that she would be able to continue the type of work that she did.  In fact, he stated that "I doubt that she can do any meaningful employment of any kind over time."  He had no doubt that she remained chronically fatigued because of her underlying disorder, which was also linked to some degree with symptoms of fibromyalgia.

On November 30, 2005, Dr. Jolivette wrote that claimant had many of the features that one would anticipate with chronic fatigue syndrome. (Tr. 498).  She also had features most consistent with fibromyalgia.  He also noted that hypochondriasis and malingering  were not features of fibromyalgia or CFS, and did not explain what claimant had experienced in her lifetime.

**(3) Consultative Psychological Examination by David Greenway, Ph.D, dated December 1, 2005**.  Dr. Greenway noted that claimant presented no evidence of exaggeration, poor effort, or malingering.  (Tr. 506).  She reported occasional spontaneous crying spells, and periods of mild confusion and difficulty concentrating. (Tr. 508).

On examination, claimant's vocabulary and range of expressive symbols were excellent.  Her receptive skills were excellent.  Her affective expression was somewhat sad and blunted.  Her insight and judgment appeared adequate.  Her social

skills were adequate.

Claimant was oriented times four.  Her attention and concentration were within the lower bounds of normal limits.  Some deterioration of concentration was likely. Recent and remote memories were intact.  Behavioral pace was slow with fair effort. Overall, her intelligence was estimated in the average range of intellectual functioning.

Dr. Greenway's impressions were somatization disorder, depression, NOS (mild to moderate sadness), and anxiety, NOS (mild subjective anxiety).  (Tr. 508-09).  Her global assessment of functioning was 65 for the past year, and she was socially stable.  (Tr. 509).  She had fair to good activities of daily living, and mild to moderate aversive affect.

Dr. Greenway determined that claimant's daily functioning was fair to good, and that she should be able to maintain at least part-time employment consistent with her current work.  Her cognitive skills were adequate to understand, remember, and carry out simple and relatively detailed instructions, and to maintain attention to perform simple repetitive tasks for two-hour blocks of time.  He stated that claimant should be able to tolerate at least mild to moderate stress associated with daily work activity and demands.  He also found that she should sustain a mild to moderate effort, and persist at a slow pace over part of each workday.  Her found that her social

skills were adequate, and that she should be able to relate to others, including supervisors and co-workers, in employment settings.  He determined that she would be considered capable to manage her own personal financial affairs.

In the Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Greenway determined that claimant had slight limitations as to understanding, remembering, and carrying out detailed instructions, and interacting appropriately with the public and supervisors.  (Tr. 512-13).  He found that she was moderately limited as to her ability to make judgments on simple work-related decisions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting.  He noted that she had poor ability to deal with stress, and was over-emotional.  (Tr. 513).

**(4) Administrative Hearing Testimony of Dr. George Smith, Medical Expert**.  At the hearing on November 3, 2005, Dr. Smith was the only person who testified.  Based on claimant's medical records, he summarized that her problems consisted of multiple aches and pains, and complaints of fatigue.  (Tr. 537).  He also noted that she had been diagnosed with Epstein Barr virus, but noted that it was "one of those entities that almost every adult has been exposed to at sometime in their life." (Tr. 538).  Additionally, he stated that she had hypoglycemia, which was just a little bit below the bottom of normal range and did not have any particular significance.

8

He opined that a psychological evaluation might be beneficial, because some of her problems could be attributed to clinical depression. (Tr. 539). He concluded that claimant did not have an impairment which met or equaled a listing.

**(5) The ALJ's Findings**. Claimant argues that the ALJ erred in evaluating claimant's medically-documented chronic fatigue syndrome and fibromyalgia, resulting in a decision unsupported by the totality of evidence. Because I find that the ALJ erred in finding that claimant had the ability to maintain employment, I recommend that this matter be **REVERSED** and that the claimant be awarded benefits.

After considering the evidence in this case, the ALJ found that claimant had the residual functional capacity to lift and carry up to 50 pounds frequently and 100 pounds occasionally; stand and walk for at least 2 hours at a time and a total of 6 hours in an 8-hour day; tolerate at least mild to moderate stress associated with day-to-day activity and demands, and sustain a mild to moderate effort and persist at a slow pace over part of each workday. (Tr. 435). The ALJ further determined that, based on Dr. Greenway's evaluation, claimant "would be able to sustain full-time work not involving more than mild to moderate stress." (Tr. 431). However, the undersigned finds that these findings are unsupported by the evidence.

9

First, the ALJ's finding that claimant could perform heavy work is not supported by her long-standing treating physician's opinion.  20 C.F.R. § 404.1567.  In his last examination, Dr. Jolivette doubted that claimant "can do any meaningful employment of any kind over time."  (Tr. 486).  While the ALJ considered Dr. Jolivette's opinion, he discounted it on the grounds that "some of his limitations are not supported by other evidence."  (Tr. 434).  The ALJ also found "nothing" in Dr. Jolivette's records which would prevent claimant "from relieving her fatigue through compliance with the normal workplace breaks given to other employees."  (Tr. 435).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence."  *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)).  Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not

10

supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.  *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

Here, the ALJ has failed to consider the factors for rejecting Dr. Jolivette's findings as required by this Circuit.  *In Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization.  *Id*. at 621 (citing *Newton,* 209 F.3d at 456).   The ALJ did not consider those factors in this case.

Additionally, the ALJ erred in finding that claimant would be able to maintain employment.  In support of the decision, the ALJ interpreted Dr. Greenway's evaluation as stating that claimant "would be able to sustain full-time work not involving more than mild to moderate stress." (Tr. 431).  However, that is not what Dr. Greenway found.  Instead, he determined that claimant "should be able to maintain *at least part-time employment* consistent with her current work." (emphasis added).  (Tr. 509).  Dr. Greenway further determined that claimant would be "moderately" limited as to her ability to make judgments on simple work-related decisions, respond appropriately to work pressures in a usual work setting, and

11

respond appropriately to changes in a routine work setting.  (Tr. 512-13).  Moreover, he found that she had poor ability to deal with stress, and was over-emotional. (Tr. 513).

A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that she can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job she finds for a significant period of time." *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) (citing *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)).  Further, the ability to work only a few hours a day or to work only on an unpredictable or intermittent basis does not constitute the ability to engage in "substantial gainful activity." *Tucker v. Schweiker*, 650 F.2d 62, 64 (5th Cir. 1982); *Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978); *Prestigiacomo v. Celebrezze*, 234 F.Supp. 999 (E.D. La. 1964).

Here, the ALJ erred in failing to determine whether claimant was capable not only of obtaining employment, but also maintaining it.  *Watson*, 288 F.3d at 218. Claimant's treating physician, Dr. Jolivette, consistently found that claimant would be limited in employment due to her CFS and fibromyalgia.  In 2000, he stated that claimant had had all of the symptoms of CFS as far back as 1998, and would experience those problems often to frequently. (Tr. 215-16).  He also determined that

she was incapable of even "low stress" jobs, and would need to take unscheduled breaks during an 8-hour working day every hour for 15 minutes at a time.  (Tr. 216-17).  In 2005, Dr. Jolivette had "no doubt that she remains chronically fatigued," and doubted that she "can do any meaningful employment of any kind over time."  (Tr. 486).  Based on this evidence from claimant's treating physician, the decision of the ALJ should not stand.

Accordingly, it is my recommendation that the Commissioner's decision be **REVERSED**, and the claimant be awarded benefits.  The undersigned recommends that January 4, 1999, which is also the date of the filing of the application, be used as the onset date for the commencement of benefits.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN**

**(10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION,* **79 F.3D 1415 (5TH CIR. 1996).**

Signed July 13, 2007, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

14